**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LINDA SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-01025-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Linda Scott's ("Scott") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.

**I.     Background**

On January 27, 2010, Ms. Scott filed her application for disability insurance benefits. (Tr. 212-215) The Social Security Administration ("SSA") denied Ms. Scott's application on March 11, 2010. (Tr. 73) She filed a timely request for a hearing before an administrative law judge ("ALJ") on May 14, 2010. (Tr. 106-107) Following a hearing, the ALJ issued a written decision on September 8, 2011, upholding the denial of benefits. (Tr. 75-91)

On December 21, 2012, the Appeals Council vacated the ALJ's decision and remanded Ms. Scott's case for additional proceedings. (Tr. 92-94) In the Remand Order, the Appeals Council directed the ALJ to, in relevant part:

- Obtain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. 404.1512-1513). The additional evidence may include, if warranted and available, consultative

> physical and mental status examinations with IQ testing and medical source statements about what the claimant can still do despite her impairments.
>
> - Give consideration to all treating and non-treating source opinions pursuant to the provisions of 20 C.F.R. 404.1527 and Social Security Rulings 96-2p and 96-5p and non-examining source opinions pursuant to the provisions of 20 C.F.R. 404. 1527(f) and Social Security Ruling 96-6p and explain the weight given to such opinion evidence. …

(Tr. 94)

On May 29, 2013, following an additional hearing, the ALJ issued a written decision finding Ms. Scott not disabled. (Tr. 8-28) The Appeals Council denied Ms. Scott's request to review the ALJ's decision (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Ms. Scott filed this appeal on June 4, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 9) Ms. Scott filed a Brief in Support of her Complaint.[1] (Doc. 11) The Commissioner filed a Brief in Support of the Answer. (Doc. 16)

## II. Decision of the ALJ

The ALJ determined that Ms. Scott meets the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since January 28, 2010, the alleged onset date of disability. (Tr. 13). The ALJ found Ms. Scott has the severe impairments of degenerative disc disease, depression, and borderline intellectual functioning but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-16)

---

[1] The Court notes that Ms. Scott's brief is not in compliance with the Local Rules of the United States District Court for the Eastern District of Missouri, which require all filings, unless otherwise permitted by leave of Court, to be double spaced typed and no more than 15 pages. See E.D. Mo. L.R. 2.01, 4.01 (D). The Court will overlook her noncompliance in this case and suggests that counsel follow the Rules in future briefs.

After considering the entire record, the ALJ determined Ms. Scott has the residual functional capacity ("RFC") to perform light work except she must avoid climbing ladders, ropes, or scaffolds. (Tr. 17) The ALJ also found that Ms. Scott can frequently stoop, kneel, crouch, or crawl and can understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 17) The ALJ found Ms. Scott unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including fast food worker, cashier, and housekeeper/cleaner. (Tr. 19-20) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 21) Ms. Scott appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

#### 1. Ms. Scott's Testimony on April 4, 2011

At the time of the hearing, Ms. Scott was living with her 21-year old son. (Tr. 35) Her son works part time. (Id.) Ms. Scott has an 11th grade education plus additional training as a medical assistant. (Id.) Ms. Scott worked as a nursing assistant on the surgery floor at St. Joseph Health Care Center. (Tr. 38) In that position she "took care of patients" per the doctor's orders. (Id.) Specifically she would help patients to the bathroom, lift and turn them over in bed, and help them to their feet. (Tr. 38-39)

When she was working, Ms. Scott testified that she was in significant pain, so much so that she had to go home and worked only half days. (Tr. 39) The pain was in her right leg and foot and in her lower back. (Id.) Ms. Scott has had two surgeries in January 2008 and April 2008. (Id.) Ms. Scott continues to have intermittent pain in her back depending on what she was doing

3

at the time. (Tr. 40) For example, she could be doing some light housework, turning to load her dishwasher, going down the stairs while carrying a laundry basket and experience the pain in her back. (Tr. 41) Ms. Scott testified that the pain level is usually at a 7 but depends on what she is doing. (Id.) When the pain is bad in her back, she lays down. (Id.) She has to lay down three or four times a day for a couple of hours. (Id.) She takes Vicodin six times a day. (Tr. 41-42) She also takes another medication for her back three times a day. (Tr. 42) Ms. Scott also reported pain radiating down her leg once or twice a day. (Id.) Ms. Scott has also been diagnosed with depression and anxiety. (Tr. 44) She testified that she forgets things. (Id.) She gets confused and has no motivation to do anything anymore. (Id.) She takes Ambien to sleep. (Id.) About once or twice a month she does not get out of bed. (Tr. 45) Additionally, she reported crying spells about three times a week lasting a couple of hours. (Id.)

On a typical day Ms. Scott gets up about 8:30 a.m. and feeds her dogs and has breakfast. (Tr. 46) She does not take a shower every day. (Id.) Then she reads, watches TV, and talks to her sister on the phone. (Id.) If she really has to, she will go to the grocery store. (Id.) She drives herself when she goes. (Id.) She does not do the heavy shopping, her son does that. (Id.) Ms. Scott testified that she would be unable to carry around a gallon of milk all day. (Tr. 42) She is not able to sit in one location for more than 20 minutes. (Tr. 43) She is also unable to stand or walk for more than 20 to 30 minutes at a time. (Id.) Ms. Scott does some light housework. (Id.) Her son helps her with the housework. (Id.) She does not sweep or vacuum and she does not lift anything other than the laundry basket down to the laundry room. (Id.)

### 2. ALJ Post-Hearing Addendums

After the conclusion of the first hearing, the ALJ included two separate post-hearing addendums. In the first, the ALJ indicates that although Scott testified that she did not receive

4

any workers compensation, Exhibit 32-F is "full of work comp notations." (Tr. 48) Those work comp notations include, per the ALJ's statement on the record, light duty work equivalent to SSA sedentary work for a period of time but then her employer, by August 27, 2008, sent her back to full duty, without any restrictions. (Tr. 48-49) In the second addendum, the ALJ notes that 32-F "has a pretty good job description of what it is the claimant did for a living." (Tr. 49-50) According to the record, Scott was a clinical partner and had clerical duties as well as nursing assistant duties. (Tr. 50)

### 3. Ms. Scott's Testimony on May 13, 2013

At the time of second hearing, Ms. Scott was living with her 21-year old and 23-year old sons. (Tr. 54) Ms. Scott reiterated that she has a high school education plus training as a certified nurse's aide. (Id.)

Ms. Scott again testified to her work at SSM Health. (Tr. 54-55) Specifically, she indicated that she worked for post-op patients, taking care of them. (Tr. 55) She would help them in and out of bed, walk them, take their vital signs, take care of their intake and output, turn them, lift them, and report anything unusual. (Id.) Ms. Scott testified that she received worker's compensation. (Tr. 56) The case settled in 2010, maybe 2011. (Id.)

Ms. Scott had back surgery in 2008. (Tr. 57) She returned to work for a period of time after that but was unable to continue working. (Id.) Her pain varies between a 5 and 7 on a 10-point scale even on medication. (Id.) Her pain can be as much as a 10 when she carries a load of laundry down to the laundry room and is probably a 7 if she sweeps the floor. (Tr. 58) It hurts to do the dishes and when she goes grocery shopping, she has to use a cart and cannot be gone long. (Id.)

She cannot walk for more than an hour in the store without experiencing some severe pain. (Id.) When she is in pain, she will sit down for about 15 minutes in the store and, once she's home, she will lay down for a couple of hours. (Tr. 58-59) She takes pain medication three times a day. (Tr. 59) Even on the medication, she has to lay down every day. (Id.) She is unable to pick up and carry a gallon a milk. (Id.) Specifically, she could not sit at a desk, pick the milk up, and move it around for eight hours a day. (Tr. 59-60) She sees Dr. Brian Smith for the pain. (Tr. 60)

In addition to her physical complaints, Ms. Scott is also very forgetful, cries very easily, and stays in bed a lot. (Tr. 61) She has a crying spell at least three times a week. (Tr. 62) They can last all day and sometimes into the next day. (Id.) About once a week, she stays in bed and does not get dressed. (Id.) Sometimes she does not bathe for two days, even three. (Id.) She does not get out of bed on those days because she is depressed. (Id.) Dr. Ilivicky is her treating psychiatrist. (Id.)

### 4. Testimony of Vocational Expert on May 13, 2013

Vocational expert, Tracy Young ("Young"), testified regarding Ms. Scott's vocational history. Ms. Scott worked as a nurse aide, code 355.674-014, with a specific vocational preparation ("SVP") of 4 and classified by the Dictionary of Occupational Titles ("DOT") as medium work. (Tr. 63) Ms. Young indicated that there were not any transferrable work skills.

For hypothetical one, the ALJ asked Ms. Young to assume a person limited to light, unskilled work who should avoid ropes, ladders and scaffolding but can frequently stoop, kneel, crouch and crawl. (Tr. 63-64) Ms. Young determined that such a person would not be able to perform any of Ms. Scott's past work. (Tr. 64) However, such a person would be able to perform a job such as fast food worker, code 311.472-010, light work; SVP of 2. (Id.) There are

2,145,000 jobs nationally available and 56,000 such jobs available in Missouri. (Id.) In addition, such a person could perform the job of cashier, code 211.462-010, light work; SVP of 2. (Id.) There are 1,380,000 jobs nationally available and 30,800 such jobs available in Missouri. (Id.) Such a person could also perform the job of housekeeping cleaner, code 323.687-014, light exertional level; SVP 2. (Id.) Nationally, there are about 223,000 of those jobs and in Missouri, about 5,000. (Id.) Ms. Young further testified that her testimony was consistent with the DOT and the Selected Characteristics of Occupations. (Id.)

Ms. Scott's attorney asked Ms. Young how her opinion would be impacted if the hypothetical included the limitation of a person who would miss three or more days per month from work. (Tr. 65) Ms. Young responded that this limitation would preclude employment. (Id.) Ms. Scott's attorney also asked Ms. Young how her opinion would be impacted if the hypothetical included the limitation of unable to maintain concentration, persistence or pace for more than 25 percent of the time. (Id.) Ms. Young responded that a person with this limitation would not be employable. (Id.)

### B. Medical Records

The ALJ summarized Ms. Scott's medical records at Tr. 13-16. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment

must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court

may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Ms. Scott raises two issues. First, Ms. Scott argues that the ALJ failed to appropriately address the medical opinions of Dr. Samantha Sattler ("Dr. Sattler"), family practitioner; Dr. Howard Ilivicky ("Dr. Ilivicky"), her treating psychiatrist; Ms. Stacy Guetschow ("Ms. Guetschow"), a therapist at the Padda Center for Interventional Pain Management[2]; Dr. David Volarich ("Dr. Volarich"), a consultative examiner; and Dr. David Lange ("Dr. Lange"), also a consultative examiner. (Doc. 11 at 12-16) Second, Ms. Scott asserts that the ALJ failed to comply with the Appeals Council's remand order. (Id. at 16-17) Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

---

[2] Ms. Scott identifies Ms. Guetschow as a therapist and the Commissioner addresses her as "an employee of the Padda Center for Interventional Pain Management". (Doc. 11 at 5; Doc. 16 at 4) There is no indication in the record of Ms. Guetschow's role at the Padda Center for Interventional Pain Management. Accordingly, the Court will defer to the claimant's categorization of Ms. Guetschow's relationship with Ms. Scott and characterize her as a therapist.

**A. Treating Physicians**

First, Ms. Scott argues that the ALJ failed to appropriately consider the medical opinions of her treating physicians, Drs. Sattler and Ilivicky. A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. In addition, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, 2014 WL 2968815, at *2 (E.D. Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).

**1. Dr. Sattler**

On April 6, 2011, Dr. Sattler completed a "Disability Status Update" form in which she indicated that Ms. Scott suffers from chronic pain syndrome, failed back syndrome and chronic low back pain. (Tr. 888-889) Dr. Sattler opined that Ms. Scott cannot push or pull anything, climb, twist, bend or stoop, or operate heavy machinery. (Tr. 888) Dr. Sattler also noted that Ms. Scott cannot lift or carry anything weighing more than 10 lbs. (Id.) Dr. Sattler further restricted

Ms. Scott to no climbing and no squatting. (Tr. 889) Dr. Sattler additionally stated that Ms. Scott cannot stand or walk for longer than 45 minutes at a time. (Id.) Finally, Dr. Sattler concluded that "no improvement [was] expected" in regards to Ms. Scott's functional capacity. (Id.)

The Court finds that the ALJ properly evaluated Dr. Sattler's opinion, listing "good reasons" for giving it "no significant weight." Prosch, 201 F.3d at 1013. Specifically, the ALJ found that "the opinion is contrary to the physical findings made at the pain management clinic by the claimant's treating source, Dr. [Brian] Smith." (Tr. 15) An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more through medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. Dr. Smith, Ms. Scott's treating physician at Pain Management Services, indicated in a treatment note dated March 29, 2011 that Ms. Scott has a normal gait, her lower extremity motor exam is a 5/5, and she displays equal bilaterally in all muscle groups. (Tr. 895) He again notes on June 28, 2011, and January 15, 2013, that Ms. Scott scored a 5/5 on muscle strength testing in the lower extremities. (Tr. 901, 913) Further, Ms. Scott reported significant relief from the pain while on her medication. (Tr. 901)

The ALJ also found Dr. Sattler's "conclusions are inconsistent with the record, including the claimant's own testimony, as set forth below, about her actual daily activities and functional accomplishments" (Tr. 15) As the ALJ indicated in her opinion, Ms. Scott reported, in a Missouri Supplemental Questionnaire dated February 22, 2010, that she does laundry, prepares simple meals, shops, is able to and does drive to the store, washes dishes, and cares for and feeds her dogs. (Tr. 16, 18, 273-278) An ALJ may consider the inconsistency between a claimant's own testimony regarding her daily activities and the medical opinion evidence. See Tippie v.

Astrue, 791 F. Supp. 2d 638, 654 (N.D. Iowa 2011) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601–02 (9th Cir.1999)) (claimant's daily activities provide relevant basis for rejecting treating physician's testimony).

Furthermore, the record as a whole supports the ALJ's determination to provide Dr. Sattler's opinion no significant weight. "[M]edical opinions must be supported by acceptable medical evidence and must not be inconsistent with other evidence on the record as a whole. Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003). Specifically, the records indicate that Ms. Scott has a normal gait, strength, coordination, and muscle mass. (Tr. 443, 729, 738) The records also note that she reported good pain relief from her medication, injections, and spinal cord stimulator. (Tr. 406, 715, 727, 738) Finally, she was repeatedly told that she could return to work with no restrictions. (Tr. 758-760, 797, 799, 800)

### 2. Dr. Ilivicky

On October 28, 2010, Dr. Ilivicky completed a disability statement in which he indicated that Ms. Scott's psychiatric impairment persists in preventing her from returning to work. (Tr. 740-741) Dr. Ilivicky opined that Ms. Scott suffers from severe depression, significant anxiety, memory impairments, cognitive slowing, concentration difficulties, and low motivation. (Tr. 740) Dr. Ilivicky concluded, "At this time, pt. appears nonfunctional" and is "unable to return to work." (Tr. 741)

The Court finds that the ALJ properly evaluated Dr. Ilivicky's opinion, listing "good reasons" for not giving it any credit. Prosch, 201 F.3d at 1013. Specifically, the ALJ found Dr. Ilivicky's opinion to be inconsistent with his own clinical records. (Tr. 19) For example, on April 21, 2009, Dr. Ilivicky opined that Ms. Scott was not restricted from performing her job functions despite his indication that she suffered from severe depression, anxiety, and inability to function.

(Tr. 785) However, Dr. Ilivicky's 2010 opinion was "inconsistent with his earlier indication that [Ms. Scott] could return to work." (Tr. 19) It is permissible for ALJ to discount an opinion that is inconsistent with physician's own treatment notes. Perkins v. Astrue, 648 F.3d 892, 899 (8th Cir. 2011). Furthermore, Dr. Ilivicky's opinion is not supported by the medical evidence on the record as a whole. See Dixon, 353 F.3d at 606. Other physicians indicated that Ms. Scott had normal mood, affect, judgment, mental status, and memory, and no depression or anxiousness. (Tr. 17, 443, 729, 738, 869, 883, 901, 903, 905, 913)

Finally, the Court is not persuaded by Ms. Scott's assertion that Dr. Ilivicky's opinion must be given controlling weight in part because it is consistent with the independent medical exam of Dr. David Lipsitz ("Dr. Lipsitz"), a psychologist. The Court does not find this assertion compelling. Dr. Lipsitz conducted a psychological consultation and intellectual evaluation of Ms. Scott in March 2011. (Tr. 883-86) In the resulting report, Dr. Lipsitz opined that Ms. Scott would not be able to function very effectively in more abstract or ambiguous situations. (Tr. 885) However, Dr. Lipsitz's opinion goes on to indicate that Ms. Scott could cope in more simplistic or concrete areas, which is consistent with the ALJ's finding that Ms. Scott could perform simple, non-detailed work. (Tr. 17) Furthermore, the ALJ is not required to address the relationship between every piece of evidence submitted. See Wheeler, 224 F.3d 891, 896 n. 3 (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

**B. Acceptable Medical Source Opinions**

Next, Ms. Scott asserts that the ALJ failed to consider the opinions of Dr. Volarich and Dr. Lange. The Parties do not dispute that Drs. Volarich and Lange were consultative examiners, not Ms. Scott's treating physicians. (Doc. 11 at 3-4; Doc. 16 at 4) As with an opinion from a treating physician, the ALJ is instructed to measure a medical source opinion by the following

factors: the nature and length of the doctor-patient relationship, if any; specialization; consistency; and supportability. 20 C.F.R. § 404.1527(c). However, "[i]n determining what weight to give 'other medical evidence' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005).

### 1. Dr. Volarich

On February 16, 2009, Dr. Volarich performed an independent medical examination of Ms. Scott at the request of her attorney. (Tr. 765-776) In his report, Dr. Volarich opined that Ms. Scott had "a 35% permanent partial disability of the body as whole rated at the lumbosacral spine due to the disc herniation at L4-5 to the right causing right leg radiculopathy that required laminectomy and discectomy." (Tr. 773-774) He additionally noted, "[t]here is an additional 15% permanent partial disability of the body as a whole at the lumbosacral spine, due to her arachnoid cyst that required hemilaminotomy and fenestration." (Tr. 774) With regard to work, he indicated that "I am reluctant to offer permanent limitations at this time since she has not achieved maximum medical improvement with reference to the 11/27/08 aggravation of her lumbar syndrome . . . ." (Tr. 775)

The Court finds that the ALJ properly evaluated Dr. Volarich's opinion. The ALJ afforded Dr. Volarich's opinion "no significant weight," finding that "[his] exam, findings, and opinions occurred well before the claimant's alleged onset date." (Tr. 14) The ALJ further noted that Dr. Volarich qualified his statements "by stating that the claimant had not yet reached maximum medical improvement," which was later supported by evidence in the record, specifically the January 2010 report of Dr. Lange. (Tr. 14, 715-724) See 20 C.F.R. § 404.1512(c) (indicating that it is the claimant's responsibility to provide medical evidence showing that she

15

has an impairment and how severe it is during the time that she claims she is disabled). See also Mutchler v. Colvin, No. 13-CV-9, 2014 WL 200810, at *6 (N.D. Iowa Jan. 17, 2014)(upholding the ALJ's decision to afford an opinion no weight because the opinion was prior to the onset period and prior to the claimant's impairment being controlled by medication). Finally, the ALJ determined that Dr. Volarich's opined limitations were "too vague to be relied upon" because Dr. Volarich stated that Ms. Scott could perform sitting, standing, lifting, bending and other activities "to tolerance." (Tr. 14) An ALJ may discount or even disregard a medical opinion if it is conclusory or vague. Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)

**2. Dr. Lange**

On January 28, 2010, Dr. Lange performed an independent spine evaluation on Ms. Scott. (Tr. 715-724) In addition to his examination of her, Dr. Lange reviewed approximately 400 pages of medical records to complete his report. (Tr. 717) In the report, Dr. Lange indicated that, "[c]ertainly there is no reason not to believe she had a herniation at L4-5 and an L5 radiculopathy and similarly, there would be no reason not to believe she has had a poor result from the surgery with ongoing symptoms to the point not only was a spinal cord stimulator indicated, but also pain management activities with prescriptions of multiple medications required." (Tr. 719) He concludes, "Ms. Scott certainly does not appear to be employable at this time." (Id.)

The Court finds that the ALJ properly evaluated the opinion of Dr. Lange. The ALJ did "not give significant weight to the opinion of Dr. Lange." (Tr. 14) In so doing, the ALJ found that, "Dr. Lange offered no reasons why claimant was unemployable and identified no specific limitations in functioning caused by any enumerated physical abnormalities." (Id.) The ALJ may give an opinion less weight "if the conclusions consist of vague, conclusory statements

unsupported by medically acceptable date." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Furthermore, Dr. Lange's opinion is one addressing the ultimate issue of disability, "a task assigned solely to the discretion of the Commissioner." Krogmeier v. Barnhart, 294 F.3d at 1023. Finally, Dr. Lange's opinion is inconsistent with the record as whole. Specifically, contrary to Dr. Lange's report (Tr. 719), Ms. Scott can drive (Tr. 883), and she has also repeatedly denied any side effects from her medication (See, e.g., Tr. 745, 893, 903).

### C. Other Source-Ms. Guetschow

Finally, Ms. Scott asserts that the ALJ failed to properly consider the opinion of Ms. Guetschow. As previously indicated, unlike Drs. Volarich and Lange, it is unclear from the record the nature of Ms. Guetschow's relationship with Ms. Scott. However, the Parties agree that Ms. Guetschow is not a treating physician under the rules. While the Commissioner addresses Ms. Guetschow as an employee of the Padda Center for Interventional Pain Management, Ms. Scott indicates that she is a therapist. As a therapist, Ms. Guetschow is not an "acceptable medical source" under 20 C.F.R. § 404.1513(a), but she can be considered as an "other source" under 20 C.F.R. § 404.1513(d). An ALJ is not required to treat the opinions of an "other source" with the same level of deference as the opinions of acceptable medical sources. See Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006). Nonetheless, the opinions of other sources may be used to show the severity of a claimant's impairments and ability to work, § 404.1513(d), and should not be ignored. Koschnitzke v. Barnhart, 293 F.Supp.2d 943, 950 (E.D. Wis. 2003). Under Social Security Ruling 06–3P, the ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows . . . a subsequent reviewer to follow the adjudicator's reasoning." S.S.R. 06–3P, 2006 WL 2329939 at *6.

Ms. Guetschow provided a short handwritten note and certification forms indicating that Ms. Scott needed to be on short-term disability starting on June 26, 2009. (Tr. 787-790) In the certification forms, totaling three pages and including mostly checked boxes, Ms. Guetschow opined that Ms. Scott could not do any heavy lifting due to lumbar disc displacement, lumbar spondylosis, degenerative disc disease, lumbago, lumbar radiculopathy, post lumbar laminectomy syndrome, and failed back surgery syndrome. (Tr. 789)

The Court finds that the ALJ gave proper consideration to the opinion of Ms. Guetschow as an "other source" under 20 CFR § 404.1513(d). The ALJ afforded Ms. Guetschow's opinion "no significant weight" "[d]ue to the lack of information in the letter regarding the specifics of the claimant's need for 'short-term disability.'" (Tr. 14) As the ALJ noted, "[t]here is no indication in the letter . . . what findings or functional limitations would require the short-term disability status, or any information regarding how long the short-term disability status was likely to last." (Tr. 14) See Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.") (internal quotation marks omitted). Further, similar to the opinion of Dr. Lange, Ms. Guetschow's opinion is one addressing the ultimate issue of disability, a task assigned solely to the discretion of the Commissioner. 20 C.F.R. § 404.1527; Krogmeier, 294 F.3d at 1023. Finally, the ALJ also indicated that Ms. Guetschow's opinion predated Ms. Scott's alleged onset date of January 28, 2010. Although this fact alone would not itself render the opinion incapable of serving as substantial evidence on the record, the ALJ has provided sufficient additional reasons to afford Ms. Guetschow's opinion no significant weight. See Stanek v. Astrue, No. CIV. 10-4870 PJS/SER, 2011 WL 6987177, at *11 (D. Minn. Dec. 23,

2011) report and recommendation adopted, No. 10-CV-4870 PJS/SER, 2012 WL 87326 (D. Minn. Jan. 11, 2012).

### D. Compliance with the Appeals Council's Remand Order

Ms. Scott also argues that the ALJ failed to comply with the Appeals Council's remand order. (Doc. 11 at 15-16) Specifically, Ms. Scott asserts that the ALJ failed to give consideration to the opinion evidence pursuant to 20 C.F.R. § 404.1527 and failed to obtain additional medical records. As discussed above, the ALJ appropriately addressed the medical opinions of Dr. Sattler, Dr. Ilivicky, Ms. Guetschow, Dr. Volarich, and Dr. Lange, giving good reasons for the weight she afforded them.

In addition to requiring the ALJ to address all of the medical source and other source opinions, the Appeals Council also directed the ALJ to "[o]btain additional evidence concerning the claimant's physical and mental impairments." (Tr. 94) "The additional evidence **may** include, if warranted and available, consultative physical and mental status examinations." (Id.) (emphasis not in original). As a result of the remand order, the ALJ held a second administrative hearing on May 13, 2013. Prior to the hearing, Ms. Scott's counsel submitted additional medical records from Dr. Bradley Davis, Ms. Scott's chiropractor (Tr. 897-899), Dr. Smith (Tr. 900-914), and Dr. Ilivicky. (Tr. 915-924) These 27 additional pages of medical evidence regarding Ms. Scott's mental and physical impairments were not previously before the ALJ. Accordingly, the Court finds the ALJ followed the Appeals Council's directive to obtain additional evidence. (Tr. 897-924) See Crum v. Colvin, No. C14-4055-MWB, 2015 WL 5084325, at *7 (N.D. Iowa Aug. 27, 2015); Carpenter v. Colvin, No. CIV. 14-1664 JRT/TNL, 2015 WL 5039009, at *19 (D. Minn. Aug. 26, 2015). Furthermore, the decision to request additional consultative physical and

mental status examinations was optional, not mandatory, and therefore the ALJ's decision not to request an additional examination cannot be a basis for remand.

VI. **Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 30th day of September, 2015.

　　　　　　　　　　　　　　　　　　／s／ John A. Ross
　　　　　　　　　　　　　　　　　　**JOHN A. ROSS**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**